### In re FELSON.

#### (District Court, N. D. New York. August 19, 1903.)

#### No. 1,255.

1. BANKRUPTCY—ORDER ON BANKRUPT TO TURN OVER PROPERTY—FINDINGS TO JUSTIFY.

    To justify an order directing a bankrupt to turn over money or property to his trustee, it must be found that he has such money or property belonging to his estate in his possession or under his control, which he has concealed and withheld from his trustee.

In Bankruptcy.

This is a proceeding in the nature of an appeal from an order made by John C. Tulloch, referee in bankruptcy, directing the bankrupt, Arthur M. Felson, to pay over to the trustee of his estate in bankruptcy, duly appointed, the sum of $6,000.

Hastings & Gleason, for the trustee.
Rosenthal & Brown, for bankrupt.
Abbott & Dolan, for certain creditors.

RAY, District Judge. On the 24th day of June, 1903, the referee in bankruptcy made an order on the return of an order to show cause before him why the bankrupt should not pay over to H. Walter Lee, his trustee in bankruptcy, goods, wares, and merchandise of the value of $20,000, or the proceeds thereof in money, which order, after reciting the adjournments and certain proceedings without finding or stating any facts whatever in relation to there being any money or property in the hands of the bankrupt, or in relation to his having concealed or disposed of any money or property since he filed his petition in bankruptcy, directs as follows: "Ordered that Arthur M. Felson, the above-named bankrupt, pay to H. Walter Lee, Esq., trustee of the above-named bankrupt, within five days from the service of a copy of this order upon the said Felson, the sum of six thousand dollars ($6000.00)." This order is dated June 24, 1903, and signed by the referee. The referee made on the same day a memoranda of facts found by him, wherein and whereby he finds that July 21, 1902, the

bankrupt had in his possession property and assets, consisting of cash,
the sum of............................................. $ 5,000 00
House worth.......................................... 1,400 00
Stock and fixtures in store worth...................... 5,400 00
That after the 21st day of July, 1902, and between that
   date and the date when he was adjudged a bankrupt,
   December 29, 1902, he purchased new goods, and the
   same were delivered to him, of the value of............ 23,000 00
That the profits on sales of goods amounted to.......... 1,150 00
                                               —————
   Making a total of............................... $35,950 00
The referee further finds that the expense ac-
   count of the store and personal outlay of
   the bankrupt between July 21, 1902, and
   December 29, 1902, was................. $ 1,000 00
That the bankrupt purchased real estate in
   New York City aggregating............ 21,700 00
That he paid the creditors during the said
   time ............................... 1,500 00
Stock and fixtures on hand, worth.......... 3,000 00
                              —————
   Making ...................................... $27,200 00
                                                —————
And leaving a balance unaccounted for................ $ 8,750 00

   The referee then makes an arbitrary allowance of $2,750 for possi-
ble minor payments and expenses, and says:

   "Giving to the bankrupt the benefit of every doubt, and making full al-
lowance for any minor payments made by the bankrupt or for a less amount
of goods received since the 21st day of July, 1902, than the sum of $23,000,
which facts may not be fairly disclosed by the evidence, I find that the
bankrupt has concealed or misappropriated property belonging to his estate
in the amount of $6,000, as set forth in said order."

   The referee does not find or state when the petition in bankruptcy
was filed, nor does he find or state that the bankrupt did not meet with
other losses, or that there was not a depreciation in the value of this
property, house, stock, fixtures, and stock purchased between July 21,
1902, and December 6, 1902, nor does he find or state whether or not
the bankrupt purchased the goods referred to, and bought after July
21, 1902, on credit or for cash. The referee does not find that the
bankrupt has any property aside from money in his possession or under
his control hidden or concealed, nor does he find that the bankrupt has
any money in his possession or under his control belonging to his
estate in bankruptcy. In order to justify an order that the bankrupt
pay over money or deliver property, it is not necessary that the evi-
dence show clearly and distinctly that the bankrupt has the money or
the property in his possession in such shape, or in such a location, that
witnesses have seen it, and may therefore testify that the bankrupt
actually has the money or property in his possession at some particular
place. It is sufficient if the evidence discloses the fact that at a certain
date the bankrupt had the property or the money in his possession,
and has not lost the same by fire or other casualty, for which he is not

responsible, or has not expended the same in gambling or in some other manner. The referee does not find or state that this bankrupt has since the filing of his petition concealed property belonging to his estate in bankruptcy, or placed same in other hands, nor does he state that he finds that the bankrupt has in his possession or under his control, or within his reach, the sum of $6,000, or any other sum.

See Boyd v. Glucklich, 8 Am. Bankr. R. 393, 116 Fed. 131, 53 C. C. A. 451, where it is held:

"A court of bankruptcy cannot lawfully order a bankrupt to deliver to his trustee money or property he has not got in his possession or under his control, and imprison him if he does not comply with the order, as that would be imprisonment for debt, and the order would not be relieved of that illegal and odious quality by calling it 'imprisonment for contempt.' * * * A court of bankruptcy cannot sentence a bankrupt to imprisonment for debt, any more than any other court of the United States can do that thing; and what it cannot do directly it cannot do by indirection, under another name. It cannot, therefore, lawfully order a bankrupt to deliver to the trustee money or property he has not got in his possession or under his control, and imprison him if he does not comply with the order. Plainly, that would be imprisonment for debt, and the order is not relieved of that illegal and odious quality by calling it 'imprisonment for contempt.' The court that makes such an order is in contempt of the law and constitution, and not the bankrupt in contempt of the court."

In short, the findings of the referee are not sufficiently definite and explicit to justify the order, and the order must be reversed and set aside, with directions to the referee to make new findings of fact on all these subjects, and state whether or not the evidence shows, in his opinion, that the bankrupt has or had at the time the proceedings were taken, or at any time between the filing of the petition and the adjudication in bankruptcy, the sum of $6,000, or any other sum, in money or property, in his possession or under his control, or within his reach, belonging to his estate in bankruptcy, which he has concealed and withheld from his trustee in bankruptcy. If the bankrupt has misappropriated property belonging to his estate in bankruptcy, the referee should state when the same was misappropriated, and, so far as possible, how.

An order will be entered accordingly, remitting the proceedings to the referee for further proceedings pursuant and in accordance with these directions.